**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AYMAN M. ABDUHAMDEH, | ) | CASE NO. 1:20-cv-954 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Ayman M. Abduhamdeh (Plaintiff), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (Commissioner), denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

### I. Procedural History

On June 16, 2017, Plaintiff filed his applications for DIB, alleging a disability onset date of January 1, 2016. (R. 11, Transcript ("Tr.") 227). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

(Tr. 166-182). Plaintiff participated in the hearing on December 11, 2018, was represented by counsel, and testified. (Tr. 102-136). A vocational expert ("VE") also participated and testified. *Id*. On July 31, 2019, the ALJ found Plaintiff not disabled. (Tr. 90). On March 3, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-7). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 12, 14 & 15).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to properly evaluate the medical evidence in this matter, including proper consideration of Listing 4.02; and, (2) the credibility assessment was not supported by substantial evidence and violated Social Security Ruling (SSR) 16-3p. (R. 12).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

On October 12, 2016, Plaintiff presented to an emergency room at 7:59 p.m. complaining of generalized swelling for a couple of days. (Tr. 825). The diagnosis was "[a]cute congestive heart failure, unspecified congestive heart failure type (HCC)," and abnormal EKG. *Id*. Treatment notes states that "The patient denies shortness of breath or dyspnea on exertion. He denies orthopnea. Patient denies any chest pain pressure or pleuritic discomfort. Patient denies dysuria frequency urgency or change in urine volume. Patient has nausea, vomiting, diarrhea." (Tr. 827).

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

Chest x-rays showed pneumonia, but no evidence of an enlarged heart (cardiomegaly). (Tr. 828). Plaintiff was discharged the same date at 11:52 p.m., approximately four hours after his arrival. (Tr. 825). Plaintiff ignored medical advice that he be admitted for further evaluation. (Tr. 828). Thomas Wido, M.D., concluded with an assessment of "[p]eripheral edema rule out congestive heart failure." *Id.*

On February 7, 2017, Plaintiff presented to Southwest General with "decompensated systolic congestive heart failure. Patient has an abnormal electrocardiogram and chest pains. Heart catheterization was therefore recommended." (Tr. 287). Jamie N. Cohen, M.D., diagnosed congestive heart failure with dilated nonischemic cardiomyopathy. *Id.*

On July 24, 2017, Plaintiff presented to the ER with weakness, shortness of breath, and cough, but denied chest pain and abdominal pain. (Tr. 901). He was seen by Attila Kiss, M.D., at 10:02 p.m. *Id.* A chest x-ray revealed no acute radiographic abnormality. (Tr. 905). Dr. Kiss observed as follows:

> Patient had no chest pain at any time. Patient did spend 30 minutes on a treadmill and then became very tired with very mild shortness of breath that is not new for him. Given the lack of symptoms and that he has completely rebounded and feels fine I do not believe this patient needs to be in hospital. Patient advised not to do any exercise until he sees his cardiologist or regular doctor. Patient also advised to return for any worsening of any symptoms. Patient in good and stable condition for discharge home I do not believe this is coronary artery disease related nor arrhythmia related.

(Tr. 906).

On February 23, 2018, Plaintiff was admitted to the Cleveland Clinic for ambulatory surgery at 8:52 a.m., and discharged approximately five hours later at 2:14 p.m. (Tr. 1007). Plaintiff underwent a right heart catheterization including measurement of oxygen saturation and cardiac output. (Tr. 1008). The diagnosis was "[c]ongestive heart failure, unspecified congestive

3

heart failure chronicity, unspecified congestive heart failure type (HCC)." *Id.*

**B. Relevant Hearing Testimony**

At the December 11, 2017 hearing, Plaintiff testified as follows:

- He feels weak due to muscle restrictions and his medication. (Tr. 111). He cannot climb a flight of steps without holding on with both hands. (Tr. 111-112). He feels really tired, and sometimes has shortness of breath and dizziness upon ascending the stairs. (Tr. 112).

- He can only stand for five minutes at a time. (Tr. 112). He uses an electric cart at the grocery store. (Tr. 113). He can only sit for fifteen minutes before needing to change positions due to body aches. (Tr. 114).

- He has asthma-like symptoms exacerbated by chemicals, fumes, air-conditioning, humidity, and temperature changes. (Tr. 115-116). He uses a nebulizer two to three times daily, as well as a rescue inhaler fifteen times per week. (Tr. 116-117).

- He takes heart medication, which makes him feel weak and dizzy. (Tr. 117-118).

- His doctors told him to exercise, but he cannot due to weakness and muscular dystrophy. (Tr. 118). He told his physicians that he walked several miles a day, but claimed it was because he did not want them to implant a defibrillator. (Tr. 118).

- The highest grade he completed was the sixth grade. (Tr. 119).

- He last worked in 2016 as a cashier. (Tr. 120). He sat for the majority of the day. (Tr. 124).

- He takes Motrin for foot pain. (Tr. 126). He takes heart medication that makes him drowsy. *Id.*

- Sometimes he takes Tylenol for headaches and body pains. (Tr. 127).

- He drives three times per week. (Tr. 127).

- He denied ever abusing street drugs or prescription drugs. (Tr. 129).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he

cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2.      The claimant has not engaged in substantial gainful activity since January 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.      The claimant has the following severe impairments: congestive heart failure, cardiomyopathy, myotonic dystrophy, asthma, and common variable immunodeficiency (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he can never operate foot controls. The claimant can only occasionally use ramps and stairs and can never use ladders, ropes or scaffolds. He can only occasionally balance, kneel, stoop, crouch, or crawl. The claimant must avoid concentrated exposure to dust, fumes, gases, and poorly ventilated areas. He must avoid concentrated exposure to extreme heat, extreme cold, wetness, and humidity. The claimant must never be required to operate a motor vehicle during the course of a workday. He cannot work around hazards such as heights or machinery, but he is able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles.

6.      The claimant is capable of performing past relevant work as a cashier II. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2016, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 82-90).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is

supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

**1. Headaches, Listing 4.02, and Plantar Fasciitis**

In the first assignment of error, Plaintiff generally asserts that the ALJ failed to properly evaluate the medical evidence. (R. 12). Rather than present a single, developed argument, Plaintiff's first assignment of error includes multiple assertions, which the court will construe as distinct arguments. *Id*. These will be addressed separately below to the extent they have been sufficiently developed.

**a. Headaches as a Non-Severe Impairment**

Plaintiff contends the ALJ erred by failing to designate his headaches as a severe

7

impairment. (R. 12, PageID# 1197). The Commissioner essentially argues that it was harmless error for the ALJ to treat Plaintiff's headaches as non-severe, because the ALJ found other severe impairments at Step Two and proceeded to the remaining steps of the sequential evaluation. (R. 14, PageID# 1213-1214).

At Step Two of the sequential analysis, claimant has the burden of proving he has a severe medically determinable impairment, in order to establish disability within the meaning of the Act. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(ii)); *Jent v. Secretary, HHS*, 919 F.2d 140, 1990 WL 183907, at *1 (6th Cir. 1990) (TABLE, text in WESTLAW) (citing *Higgs v. Secretary, HHS*, 880 F.2d 860, 862-863 (6th Cir. 1988)); *Gist v. Secretary, HHS*, 736 F.2d 352, 357 (6th Cir. 1984)). As defined by Social Security regulations, a "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Nevertheless, "[a]t step two 'significant' is liberally construed in favor of the claimant[, but] [t]he regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 428 (6th Cir. 2007); *see also* 20 C.F.R. § 416.920a(d)(1) ("If [the Commissioner] rate[s] the degree of limitation as 'none' or 'mild', [the Commissioner] will generally conclude that [the] impairment is not severe…"). The Sixth Circuit Court of Appeals has construed Step Two's severity requirement as a "de minimus hurdle." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007).

While the ALJ declined to designate Plaintiff's headaches as "severe" (Tr. 83), his failure to do so does not necessarily signify error. Because an ALJ must move on to the subsequent steps in the sequential evaluation even if only one impairment is designated as "severe," an ALJ is not

required to analyze the remainder of a claimant's impairments to determine whether they too are severe. *See, e.g., Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008) ("The fact that some of [claimant's] impairments were not deemed to be severe at step two is … legally irrelevant") (*citing Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same) holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe); *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x. 574, 577 (6th Cir. 2009) (same); *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. App'x. 516, 522 (6th Cir. 2008)).

Once the ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by *all of an individual's impairments, even those that are not 'severe.'*" SSR 96–8p, 1996 WL 374184 at *5 (Jul. 2, 1996) (emphasis added). Thus, an ALJ's decision not to designate an impairment as "severe" at step two does "not constitute reversible error," so long as the ALJ considers all of a claimant's limitations caused by both severe and non-severe impairments at the remaining steps of the sequential evaluation. *Maziarz*, 837 F.2d at 244; *see also Nejat*, 359 Fed. App'x at 576-577.

Although Plaintiff is correct that the ALJ did not designate his headaches as a "severe" impairment, the ALJ found multiple severe impairments, continued with the sequential evaluation, and considered the impact of non-severe impairments when arriving at the residual functional capacity (RFC).[2] Specifically, in part five of the decision (Tr. 87), the ALJ expressly considered Plaintiff's alleged headaches and determined as follows:

> The claimant sought medical attention on several occasions in 2016 and 2017 for headaches, which he stated had been affecting him for the past 16 years (3F; 4F; 6F). He was diagnosed with headache disorder (4F). Brain CT scans had normal

---

[2] The RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. § 404.1545(a). The ALJ bears the responsibility for assessing a claimant's RFC, based on the relevant evidence. *See* 20 C.F.R. § 404.1546(c).

results (see, e.g., 4F/138-139). Overall, the evidence does not indication [sic] that the claimant's headaches have caused symptoms of frequency or severity sufficient to significantly limit his functioning or to prevent him from maintaining a fulltime work schedule. Therefore, the evidence of record does not support a finding that it would have more than a minimal effect on the claimant's ability to meet the basic demands of work activity (20 CFR 404.1522; Social Security Rulings (SSRs) 85-28 and 16-3p).

(Tr. 87).[3]

Plaintiff's hearing testimony did not meaningfully discuss headaches, save for his statement that he occasionally takes Tylenol to help with headaches. (Tr. 127). The ALJ was not obligated to accept Plaintiff's statements concerning his headaches as fully credible, and in fact did not do so. The ALJ stated: "In addition to the claimant's testimony, the undersigned has read and considered the written statements of the claimant and his representative (1E; 4E; 6E). Those statements and documents contain many allegations mirroring those presented at the hearing, and are found to be less than fully consistent with the evidence." (Tr. 85). Moreover, Plaintiff's brief and reply points only to Plaintiff's self-reported complaints of headaches, but does not cite any medical source opinions suggesting that Plaintiff's headaches would result in limitations inconsistent with the demands of the RFC. (R. 12, PageID# 1197-1198; R. 15, PageID# 1225-1226). Even where an impairment is designated severe, it is not necessarily debilitating. A diagnosis alone is of little consequence, as it is well established that a diagnosis alone does not

---

[3] The Commissioner also points to treatment notes where Plaintiff sought treatment at the ER for a headache (Tr. 807), and hospital personnel suspected drug seeking behavior. (Tr. 811-812). Treatment notes state as follows:

> Pt was recognized by ED RN who had seen him multiple times in the ED but with a different name and MRN. The other chart was notable for a care plan - that pt was not supposed to get narcotics in ED. When patient was asked for his ID for verification, he said he was going out to his car to get ID, then left without getting discharge papers.

(Tr. 812).

indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *Vance v. Comm'r of Soc. Sec.,* 260 Fed. Appx. 801, 806 (6th Cir. 2008) ("a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits").

Therefore, Plaintiff's argument is without merit.

### b. Listing 4.02

Plaintiff asserts that the ALJ erred in his consideration of Listing 4.02, claiming that there was evidence that he had an ejection fraction under thirty percent and "both persistent symptoms of heart failure as set forth above and three of more separate episodes of congestive heart failure." (R. 12, PageID# 1200). Plaintiff asserts that "[e]ven the ALJ acknowledged that Plaintiff was hospitalized in October 2016 and had a catheterization in February 2017," but failed to consider Plaintiff's emergency room visit in July 2017 and the second catheterization in February 2018. (R. 12, PageID# 1200, *citing* Tr. 84, 90-906, 1009-1010). Plaintiff's argument is rather conclusory, and fails to discuss the various B criteria for the applicable listing and how the ALJ's discussion with respect to each is allegedly deficient. Nevertheless, the court considers the argument.

At the third step in the sequential evaluation, the burden of proof for establishing that an impairment meets or equals the requirements of a listing rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). To meet a listed impairment, a claimant must satisfy *all* of the criteria in the listing. *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. App'x 532, 536 (6th Cir. 2002) (citing *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)). There is no "heightened articulation standard" in considering the listing of impairments; rather, the court considers whether substantial evidence supports the ALJ's findings. *Bledsoe v.*

11

*Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *accord Osborne v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 113937, 2014 WL 4064078 (N.D. Ohio Aug. 15, 2014) (Knepp, M.J.); *Snoke v. Astrue*, 2012 U.S. Dist. LEXIS 21930, 2012 WL 568986, at *6 (S.D. Ohio 2012).

Furthermore, an ALJ's failure to directly list the elements of a listing and then discuss the evidence of record showing that a claimant does or does not meet that listing can be harmless error if the ALJ's ultimate Step Three finding is supported by factual findings made elsewhere in the record. *Campbell v. Comm'r of Soc. Sec.*, No. 1:13 CV 329, 2013 U.S. Dist. LEXIS 182402, at *14 n.59 (N.D. Ohio Dec. 17, 2013) (*citing White v. Colvin*, No. 4:12-cv-11600, 2013 U.S. Dist. LEXIS 131775, at *21-22 (E.D. Mich. Sep. 16, 2013) (collecting cases, noting "[n]umerous courts have read *Bledsoe[v. Barnhart*, 165 Fed. App'x 408 (6th Cir. 2006),] as "implicitly endors[ing] the practice of searching the ALJ's entire decision for statements supporting his [S]tep [T]hree analysis.")).

The disputed listing herein is Listing 4.02, chronic heart failure while on a regimen of prescribed treatment with symptoms and signs described in 4.00D2, which contains the following requirements:

> 4.02 The required level of severity for this impairment is met when the requirements in both A and B are satisfied.
>
> A. Medically documented presence of one of the following:
>
>> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
>>
>> 2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

AND

B. Resulting in *one* of the following:

    1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; *or*

    2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); *or*

    3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

        a. Dyspnea, fatigue, palpitations, or chest discomfort; or

        b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

        c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

        d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Defendant asserts that one of the elements of the Listing is that his symptoms occur "while on a regimen of prescribed treatment," but that Plaintiff has not shown that his heart failure symptoms occurred while on his prescribed regimen. (R. 14, PageID# 1216). In his reply,

13

Plaintiff counters that Listing 4.02 does not require that a person be following a prescribed regimen. The court disagrees with Plaintiff, as Listing 4.02 states that chronic heart failure "while on prescribed treatment." Nevertheless, the ALJ did not find that Plaintiff failed to meet the Listing because he was not a prescribed treatment regimen. Therefore, the court will not consider this *post hoc* argument.[4]

The parties do not appear to dispute that there is evidence the "A" criteria was satisfied, rather the dispute revolves around Plaintiff's contention that the ALJ's finding—that the B criteria was not satisfied—was erroneous. The "B" criteria of Listing 4.02 is written in the disjunctive, thus a claimant need only satisfy one of the three sub-parts to meet or equal the listing requirement.

Defendant's brief also posited that Plaintiff cannot meet any of the B criteria, as Plaintiff did not undergo an exercise tolerance test that yielded a threshold workload equivalent as required by B-3, nor did a medical professional conclude that the performance of an exercise test would present a significant risk to Plaintiff as required by B-1. (R. 14, PageID# 1217-1218). In his reply, Plaintiff does not assert that he satisfied B-1 or B-3, but does contend that he satisfied the criteria of B-2, which does not require an exercise test-related finding. (R. 15, PageID# 1227).

Again, B-2 requires the following: (1) three or more separate episodes of acute congestive heart failure; (2) within a consecutive 12–month period; (3) with evidence of fluid retention from clinical and imaging assessments at the time of the episodes; (4) requiring acute extended

---

[4] Moreover, the Commissioner's argument does not demonstrate that Plaintiff was not on a prescribed treatment regimen for his heart disease, but rather that Plaintiff was not compliant with the treatment regimen—a related but not identical issue.

physician intervention such as hospitalization or ER treatment for 12 hours or more; and (5) separated by periods of stabilization. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. In the decision, the ALJ addressed Listing 4.02, and found that all of the listing level criteria were not satisfied. (Tr. 84). With respect to B-2, the ALJ found that "[t]he evidence also fails to demonstrate that the claimant has suffered three or more separate episodes of acute congestive heart failure within a consecutive 12-month period requiring acute extended physician intervention for 12 hours or more as described in 4.02B2 …." *Id*. Specifically, the ALJ explained that "[t]he claimant was hospitalized in October 2016 for exacerbation of congestive heart failure symptoms, and he received a left heart catheterization in February 2017, but he did not have any other acute episodes requiring extended physician intervention within 12 months of those events (1F)." (Tr. 84).

In his reply, Plaintiff asserts that the ALJ "ignored the fact that Plaintiff had an emergency room visit in July 2017 (Tr. 901-906) and a second catheterization in February 2018 (Tr. 1009-1010)," concluding that these additional visits satisfied the requirement for 3 or more episodes. (R. 15, PageID# 1227). The court disagrees with Plaintiff's conclusory characterization of the four visits. First, the court is highly skeptical whether the October 2016 and February 2017 episodes satisfy the criteria. The October 2016 visit ended after several hours, well short of the "acute extended physician intervention such as hospitalization or ER treatment for 12 hours or more" as required by the Listing. In addition, Plaintiff points to no evidence that either of those treatment episodes would satisfy the Listing by showing "evidence of fluid retention from clinical and imaging assessments at the time of the episodes." The court does not construe the ALJ's decision as affirmatively finding that the October 2016 and February 2017 episodes satisfy the B-2 criteria, as he simply found that there was no potential third episode, which would

15

render a close comparison of these two events to Listing 4.02(B)(2) criteria moot.

Even assuming for the sake of argument only that the ALJ affirmatively believed the October 2016 and February 2017 episodes satisfied the B-2 criteria, and that such a finding operates as law of the case, Plaintiff's argument would still fail. The July 2017 ER episode does not appear to qualify as an episode of acute congestive heart failure, as treating physician stated that he did "not believe this is coronary artery disease related nor arrhythmia related." (Tr. 906). Again, Plaintiff points to no evidence the July 2017 episode revealed evidence of fluid retention from clinical and imaging assessments or that the July 2017 episode required acute extended physician intervention such as hospitalization or ER treatment for 12 hours or more.

Finally, the February 2018 episode occurred more than twelve months after the October 2016 episode period. Specifically, they were more than sixteen months apart. The Listing requires three (or more) separate episodes of acute congestive heart failure within a **consecutive 12–month period**; three such episodes in a seventeen month period is simply insufficient. Moreover, the outpatient surgery in February of 2018 lasted approximately five hours—well short of the requirement that the medical intervention last for upwards of 12 hours.

The court finds Plaintiff's argument wholly without merit when comparing the listing requirements with a close rather than conclusory review of the pertinent treatment records.

In addition, Plaintiff's concomitant argument concerning the ALJ's reliance on the opinion of Dr. Yamour is rendered moot.[5]  As the court understands Plaintiff's argument, it is his position that Dr. Yamour relied solely upon the findings of the State Agency physicians (R. 15, PageID# 1227), and that Dr. Yamour did not hear the testimony of Plaintiff. (R. 12, PageID# 1200). As

---

[5]  Following the administrative hearing, the ALJ requested an independent medical opinion from Dr. Yamour, who completed medical interrogatories. (Tr. 87, 1112-1122).

such, Plaintiff contends the ALJ did not have substantial evidence to support his finding that Plaintiff did not satisfy Listing 4.02.[6]  As discussed above, the episodes relied upon by Plaintiff were incapable of satisfying the B-2 criteria of Listing 4.02. Therefore, any perceived error in the ALJ's reliance upon the responses of Dr. Yamour is harmless.

### c. Undeveloped Arguments

In two sentences, Plaintiff contends that "the ALJ failed to mention any of Plaintiff's problems with his right foot (Tr. 892-900). Plaintiff's continuing problems with plantar fasciitis would have precluded him from the standing/walking the requisite six hours for work at the light level of exertion." (R. 12, PageID# 1198). Plaintiff's conclusory statements alleging that foot problems would have prevented him from performing light work is in and of itself insufficient to raise an issue for the court's consideration. Plaintiff does not develop any meaningful argument nor cite to relevant medical records and/or medical opinions. *Id*. The court cannot take such a broad and undeveloped assertion and transform it into a substantive argument without improperly becoming an advocate for Plaintiff. It is well established that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See. e.g., Kennedy v. Commissioner*, No. 03-1276, 2003 WL 23140056, at *1 (6ᵗʰ Cir. Dec. 12, 2003) (*citing United States v. Elder*, 90 F.3d 1110, 1118

---

[6] The court further notes that Plaintiff's assertions are inaccurate. In her interrogatory responses, Dr. Yamour indicated the medical evidence did *not* establish that Plaintiff met or equaled any listed impairment. (Tr. 1121). Dr. Yamour did *not* rely solely on the State Agency physicians' opinions (Exh. 3A; Tr. 155-160) as Plaintiff contends. Dr. Yamour also expressly cited Exhibits 1F at 7 (a treating report of cardiologist Dr. Cohen signed February 23, 2017, Tr. 293); Exhibit 4F at 7-8 (cardiovascular testing results from April of 2017, Tr. 405-406); Exhibit 12F at 1-3 (a treating report from Todd E. Rambasek dated April 9, 2018, Tr. 1019-1021); and Exhibit 14F at 6 (treatment notes from May 1, 2018 indicating that Plaintiff was Functional Class II and could walk 4-5 miles at a time, Tr. 1068-1069). (Tr. 1120-1121).

(6th Cir. 1996)) (rejecting perfunctory argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997), *cert. denied*, 523 U.S. 1050 (1998) (same); *McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (court under no obligation to scour record for errors not identified by claimant). The *McPherson* court aptly stated: "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson*, 125 F.3d at 995-996 (internal citations omitted); *accord Paul v. Detroit Edison Co.*, 642 Fed. App'x 588, 592 (6th Cir. 2016); *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15-cv-666, 2017 U.S. Dist. LEXIS 188005, *8 (N.D. Ohio, Nov. 14, 2017) (declining to "add flesh to the bones of a party's skeletal … argument") (Carr. J.). Therefore, the court deems this argument waived.

### 2. Credibility Assessment

In the second assignment of error, Plaintiff asserts the ALJ erred by discounting the credibility of his symptoms. (R. 12, PageID# 1203-1206).

"[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). An ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). The *Villarreal* court noted "tolerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded." *Villarreal*, 818 F.2d at 463 (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be

reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation").

"In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017). Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*. at *10. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

According to SSR 16-3p, evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[7] 2017 WL 5180304 at *2-3. The ALJ's decision found the

---

[7] "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed.

first step was satisfied and states that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms…." (Tr. 86).

After step one is satisfied, an ALJ should consider the intensity, persistence, and limiting effects of an individual's symptoms. The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 86). The ALJ discussed Plaintiff's alleged functional limitations in the following discussion:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.
>
> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned

App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two social security rulings, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the current SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do workrelated activities.

At the hearing, the claimant and his representative presented the following allegations: The claimant is physically weak from impairments including myotonic dystrophy, chronic obstructive pulmonary disease (COPD), heart problems, hypogammaglobulinemia, and migraine headaches. The claimant has difficulty with climbing stairs, standing, and walking. He estimates he can stand up to five minutes and sit up to 15 minutes at a time. He uses an electric cart at the grocery store. The claimant suffers from coughing and wheezing, which is exacerbated by fumes, household chemicals, and temperature extremes. He uses a rescue inhaler on a daily basis. He takes medications for his heart problems which cause side effects of low blood pressure and weakness. The claimant's weakness keeps him from exercising. He told his doctor that he was walking regularly for exercise, so that his doctor would not recommend a defibrillator, but in actuality, he was not exercising at all.

In addition to the claimant's testimony, the undersigned has read and considered the written statements of the claimant and his representative (1E; 4E; 6E). Those statements and documents contain many allegations mirroring those presented at the hearing, and are found to be less than fully consistent with the evidence.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 85-86).

Neither Plaintiff's brief nor his reply identify any procedural shortcoming in the ALJ's actual explanation. Instead, Plaintiff insists that objective testing, as well as his own documented complaints and testimony rendered the ALJ's decision unsupportable.

First, Plaintiff's argument that his testimony is supported by his own testimony or his documented complaints amounts to circular reasoning. Furthermore, there is ample case law rejecting such questionable logic. Plaintiff's statements made to medical sources or to an occupational therapist are not *per se* credible, nor are they transformed into "medical opinions"

simply because the patient's statements have been recorded in treatment notes. *See, e.g., Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 804 (6th Cir. 2011) (concluding the physician's statement "is not a 'medical opinion' at all—it merely regurgitates [the patient's] self-described symptoms"); *accord Paddock v. Comm'r of Soc. Sec.*, No. 1:11-cv-7, 2012 U.S. Dist. LEXIS 135860, 2012 WL 4356711 (W.D. Mich. Sept. 24, 2012); *see also Boughner v. Comm'r of Soc. Sec.*, No. 4:16-CV-1858, 2017 U.S. Dist. LEXIS 89060, 2017 WL 2539839, at *8 (N.D. Ohio May 22, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 89061, 2017 WL 2501073 (N.D. Ohio June 9, 2017) (finding that medical records containing observations recorded by a claimant's physician were likely statements made by plaintiff about his condition and not medical opinions as defined by the regulations); *Coleman v. Comm'r of Soc. Sec. Admin.*, No. 1:16-CV-0179, 2016 U.S. Dist. LEXIS 184079, 2016 WL 8257677, at *14 (N.D. Ohio Nov. 29, 2016), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 21835, 2017 WL 633423 (N.D. Ohio Feb. 15, 2017) (finding that "office notes reflect plaintiff's own subjective statements regarding her condition" and, therefore, do not constitute "objective medical evidence"); *Rogers v. Astrue*, No. 11-cv-82, 2012 U.S. Dist. LEXIS 24712, 2012 WL 639473, at *4 (E.D. Ky. Feb. 27, 2012) ("Simply recording Plaintiff's subjective complaints is not objective medical data therefore Dr. Lyons' clinical findings were insufficient to support a deferential review by the ALJ.")

Second, once step one is satisfied, when considering the intensity, persistence, and limiting effects of an individual's symptoms, an ALJ should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p at *4-8 (same factors as in SSR 96-7p). The ALJ discussed several of the seven factors set forth in SSR 16-3p for finding Plaintiff less than fully credible. These included Plaintiff's daily activities and treatment used to control symptoms.

Specifically with respect to treatment, the ALJ noted that Plaintiff was "advised to consider implantation of an implantable cardioverter-defibrillator (ICD) but the treatment records do not indicate that he has yet received one (11F/20; 14F/22)." (Tr. 86). The ALJ also noted "treatment records show largely well controlled symptoms except during isolated episodes of cardiovascular or respiratory exacerbation." *Id*. The ALJ pointed to other medical records that Plaintiff was "doing well on his current treatment regimen…." *Id*. Contrary to his hearing testimony, the ALJ noted that Plaintiff reported rarely needing his rescue inhaler. *Id*.

With respect to daily activities, the ALJ pointed to Plaintiff's own statements that he was walking on a treadmill every other day at 3.5 miles per hour and was tolerating it well, and walking a distance of four to five miles per day. (Tr. 87). The ALJ noted that "[w]hile the claimant alleged at the hearing that he had lied to his doctor about the extent of his physical activity, that allegation is inconsistent with the treatment records, in which there is no indication that the claimant was providing false information to his healthcare providers." *Id*.

Though greater discussion is always preferred, an ALJ is not required to analyze all seven factors, but should consider the relevant evidence. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (Baughman, M.J.) ("The ALJ need not analyze all seven

factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence"); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005) (finding that neither SSR 96-7p nor the regulations "require the ALJ to analyze and elaborate on each of the seven factors when making a credibility determination"); *Wolfe v. Colvin*, No. 4:15-CV-01819, 2016 WL 2736179, at *10 (N.D. Ohio May 11, 2016) (Vecchiarelli, M.J.); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *9 (N.D. Ohio Apr. 4, 2012) (White, M.J.). SSR 16-3p itself states that where "there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor," but rather will only "discuss the factors pertinent to the evidence of record." *Id*. at *8.

Finally, Plaintiff takes issue with the ALJ finding him not credible despite his treating cardiologist designation that Plaintiff was either New York Heart Association Functional Class II or III. (R. 15, PageID# 1228). Plaintiff cannot show the credibility determination was erroneous simply by pointing to some evidence of record that may support his allegations of greater limitations and ignoring the evidence of record cited by the ALJ supporting the ALJ's reasons for discounting subjectively reported symptoms. Moreover, Plaintiff's recitation of those portions of the record that he believes would support greater limitations are tantamount to an invitation for this court to reweigh the evidence and to engage in its own credibility analysis. However, this courts role in considering a social security appeal does not include reviewing the evidence *de novo*, reweighing the evidence, or making credibility determinations. *Brainard*, 889 F.2d at 681.

Given the high level of deference owed to an ALJ's findings with respect to the evaluation of a claimant's alleged symptoms and resulting limitations, under the circumstances presented herein, the court does not find the ALJ's credibility analysis was insufficient. Thus, Plaintiff's final assignment of error is without merit.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: July 16, 2021

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F. 3d 520, 530-31 (6th Cir. 2019).**